**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3665-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

FRANCIS PRETO,

     Defendant-Appellant.

_____

Submitted January 31, 2024 – Decided March 18, 2024

Before Judges Firko and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 11-05-0884.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel J. Marzarella, Chief Appellate Attorney, of counsel; William Kyle Meighan, Supervising Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Francis Preto appeals from a April 5, 2022 Law Division order denying his second petition for post-conviction relief (PCR) without an evidentiary hearing. In 2012, defendant was convicted at trial for conspiring and attempting to kill his wife. He was also convicted for conspiring and attempting to kill a fellow Ocean County Jail inmate who reported the murder plot to authorities. In his first PCR petition, defendant claimed his trial counsel rendered ineffective assistance. He now contends his first PCR counsel was also ineffective. After carefully reviewing the record in light of the arguments of the parties and governing legal principles, we affirm substantially for the reasons set forth in Judge Guy Ryan's comprehensive twenty-seven-page written opinion.

I.

We need only briefly summarize the facts adduced at trial, which are fully recounted in our opinion affirming defendant's convictions on direct appeal. State v. Preto, Docket No. A-4212-12T4 (July 8, 2016). While in jail, defendant asked a fellow inmate, Timothy Milton, to arrange to kill defendant's wife because she wanted a divorce. Defendant sought to hire Milton's "cousin"— who did not actually exist—to commit the murder and "[m]ake it look like it's a robbery" in exchange for $10,000. Defendant gave Milton detailed instructions,

including when to commit the murder, how to receive the payment, and to "[j]ust dump" his wife's body. Unbeknownst to defendant, Milton alerted the Ocean County Prosecutor's Office about defendant's plot. Milton agreed to wear a recording device when he interacted with defendant. The recordings were played at trial and confirmed the plot.

Defendant eventually learned Milton cooperated with law enforcement. Defendant told Charles Anderson, another inmate, that Milton deserved to die. Defendant asked Anderson to stab Milton in his neck or "take care of the situation" to prevent him from testifying. In exchange, defendant promised to pay Anderson's $200,000 bail. In addition, defendant told another inmate, Maurice Peace, that Milton should be "whacked." Peace wrote a letter to the prosecutor's office and agreed to wear a recording device when speaking to defendant. During a recorded conversation, the two men discussed how Milton's murder was to be accomplished.

In August 2009, defendant was charged in a superseding indictment with two counts of conspiracy to commit murder, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3(a), and two counts of attempted murder, N.J.S.A. 2C:5-1 and 2C:11-3(a). The first trial ended in a hung jury. In the fall of 2012, the jury in the second trial convicted defendant of first-degree conspiracy to murder his wife,

3

first-degree attempted murder of his wife, and first-degree conspiracy to murder Milton. Defendant was acquitted of attempting to murder Milton. In March 2013, defendant was sentenced to an aggregate sixteen-year prison term subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. This sentence was ordered to be served consecutive to an unrelated prison sentence defendant was serving at the time of sentencing. On direct appeal, we affirmed defendant's convictions, but remanded to correct the calculation of gap-time and jail credits. State v. Preto, Docket No. A-4212-12T4 (July 8, 2016).

In May 2017, defendant filed his first petition for PCR. Defendant claimed his trial counsel was ineffective for numerous reasons, including not contacting a potential witness, Reilly, not presenting documentary evidence presented in the first trial, and for failing to communicate with him to prepare for trial. Judge Ryan rejected defendant's arguments, finding he did not establish a prima facie case of ineffective assistance of counsel.

With respect to Reilly, the PCR judge confirmed that trial counsel tried to locate him. In the trial court transcript, the trial judge stated, "I think [defense counsel] indicated they weren't able to find [Reilly], right, we checked the jail, I just want to make sure we check the jail and probation, unable to find him, and there's no [other defense witnesses]?" Defense counsel responded, "[t]hat's

correct, [Y]our Honor."  Additionally, in his first PCR petition, defendant did not submit a certification from Reilly, admitted Reilly's whereabouts were unknown, and admitted he was "a bad heroin addict" who was frequently in jail. Nor did defendant submit a certification by himself as to what Reilly would have testified.

Judge Ryan concluded:

> Defense counsel is entitled to latitude for not wildly pursuing Reilly's whereabouts given the limited credibility he would have likely had with the jury. Defense counsel is entitled to deference in her decision not to make further efforts to call Reilly given his criminal record and drug addiction.  Any additional efforts by defense counsel to call Reilly as a witness would have been futile and meritless.  Counsel has no duty to raise meritless claims or arguments.
>
> [Citations omitted.]

On September 27, 2018, Judge Ryan entered an order denying defendant's first PCR petition accompanied by a thirty-two-page written opinion.  On June 10, 2020, we affirmed the denial of the first petition.  State v. Preto, Docket No. A-1393-18Tl (June 10, 2020).  We rejected defendant's argument "his trial counsel should have pursued Reilly's whereabouts more aggressively."  We emphasized "defendant was unable to locate Reilly while preparing his PCR and acknowledges he does not even know if Reilly is still alive."  We added:

5

Even putting aside that defendant's arguments with respect to Reilly are bald assertions, defendant's own electronically recorded statements would have contradicted Reilly's hypothesized testimony. In a jailhouse conversation recorded on July 2, 2008, for example, defendant and Milton discussed the details of the plan to kill Ms. Preto, including Milton's payment for killing Ms. Preto and the logistics of dumping her body. Defendant told Milton he would pay $10,000 for Milton to "to take her out." At no point in any of the recorded conversations between defendant and Milton does anyone refer to a scheme to steal personal watercraft.

. . .

In this instance, in exercising her professional judgment, defendant's trial counsel was permitted, if not obligated to consider the credibility of Reilly's testimony in light of the other evidence presented at trial. Defendant explained at oral argument that in preparing for defendant's second trial, his second trial counsel read all the materials supplied by defendant's first trial counsel. Counsel's decision to not make further effort to locate and subpoena Reilly was thus made with an understanding that Reilly would have provided testimony contradicted by defendant's own admissions, reducing Reilly's credibility and the value of his testimony. In these circumstances, we agree with the PCR court that defendant has provided no basis for concluding that counsel's performance with respect to this potential witness was unreasonable or otherwise constitutionally deficient.

. . .

In sum, given the uncertainty concerning Reilly's testimony, as well as Reilly's criminal record and

6

history of drug addiction, we agree with the PCR court's conclusion that it was reasonable that counsel did not further pursue Reilly's whereabouts.

On July 7, 2020, defendant filed a second PCR petition—the matter now before us—claiming ineffective assistance of his first PCR counsel. The central issue is whether the first PCR counsel "failed to secure a statement or certification from the witness which could have substantiated an ineffectiveness claim against trial counsel for failing to call that witness to testify at trial."

For this second petition, defendant has provided his own affidavit in which he claims his attorney from the first trial—which ended in a hung jury and mistrial—had "a statement by . . . Reilly, pertaining [to] conversations [defendant] had with Timothy Milton." Defendant claims Reilly's statement "clearly says that Reilly, Milton and I discussed plans to remove jet skis (known as WaveRunners[1]) from my former [marital] property. . . Reilly speaks about how we had made plans to trespass onto the property, and retrieve the Wave[R]unners, sell them and split the proceeds." Defendant also claims Reilly stated "the conversations the three of us had pertained ONLY to obtaining and selling the Wave[R]unners" and "there was never any discussion, or comments whatsoever about murdering or harming my wife."

---

[1] "WaveRunner" is a trademarked name and type of personal watercraft.

In a second affidavit submitted in support of the present PCR petition, defendant states Reilly "is familiar with jail/prison culture, and would have testified that in the jail/prison environment, inmates have a tendency to put on a façade, of being a tough, no-nonsense, short tempered individual, with everyone an[d] everything."  The affidavit further asserts:

> Reilly would have testified that there were guys in the jail who did not respect other inmates['] age, health conditions, etc[.], an[d] prey upon the weaker inmates therefore many weaker inmates have adopted the thought talk ploy in an attempt to protect themselves through this façade.  It was apparent to Reilly that inmate [defendant] was putting on a façade on tough talk.

On April 5, 2022, Judge Ryan denied defendant's second petition.  The judge rejected defendant's central claim, finding:

> As noted in this court's first PCR opinion, no certification was submitted to verify the claims of . . . Reilly.  When considering the factors set forth in [State v. L.A., 433 N.J. Super. 1, 16-17 (App. Div. 2013)], and the deference accorded to trial counsel in making strategic decisions, this court concludes first PCR counsel was not ineffective in failing to secure a certification from . . . Reilly.  To this date, no one has located Reilly nor substantiated that he could have or would have provided testimony beneficial to the defendant.  Further, second PCR counsel advised at oral argument that he came into possession of recorded statements of Reilly which he recently acquired from Glen Kassman, defendant's trial counsel in the first trial.  As a result, the court left the record open at

8

defendant's request to submit any favorable transcripts after reviewing the recorded statements. After a significant opportunity for review, second PCR counsel declined to submit any statements to support the claim, buttressing the conclusion that Reilly never provided anything helpful for defendant.

The obligation of first PCR counsel in regard to Reilly's supposed testimony was to "advance all of the legitimate arguments requested by the defendant that the record will support." Rule 3:22-6(d). First PCR counsel raised this claim but could not support it with a certification by Reilly because Reilly could not be located then, nor has he been located since. Reilly's location was unknown to defendant and trial counsel at the time of the second trial and first PCR counsel indicated it was unknown whether Reilly is still alive. Further, no one has found any prior statements by Reilly, recorded, or written, which substantiates he should have been called as a defense witness at trial. Accordingly, this court finds first PCR counsel was not ineffective for failing to locate Reilly to secure a certification or affidavit.

This appeal follows. Defendant raises the following sole contention for our consideration:

> THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF FIRST PCR COUNSEL'S INEFFECTIVENESS FOR FAILING TO SUBMIT AN AFFIDAVIT OR CERTIFICATION REGARDING . . . REILLY, A POTENTIAL EXCULPATORY WITNESS.

II.

We begin our analysis by acknowledging the legal principles governing this appeal. PCR serves the same function as a federal writ of habeas corpus. State v. Preciose, 129 N.J. 451, 459 (1992). When petitioning for PCR, a defendant must establish, by a preponderance of the credible evidence, that he is entitled to the requested relief. Ibid. To sustain this burden, the petitioner must allege and articulate specific facts, "which, if believed, would provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

To establish an ineffective assistance of counsel claim, a defendant must demonstrate: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-pronged analysis in New Jersey). "That is, the defendant must establish, first, that 'counsel's representation fell below an objective standard of reasonableness' and, second, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Alvarez, 473 N.J. Super. 448, 455 (App. Div. 2022) (quoting Strickland, 466 U.S. at 688).

When assessing Strickland's first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential." 466 U.S. at 669. "Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999). Thus, a trial court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Under Strickland's second prong, the defendant must show "the deficient performance prejudiced the defense." Id. at 687. That is, "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. It is insufficient for the defendant to show the errors "had some conceivable effect on the outcome." Id. at 693. Ultimately, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if [it] had no effect on the judgment." Id. at 691.

Further, "[a]ny factual assertion that provides the predicate for a claim of relief must be made by an affidavit or certification pursuant to Rule 1:4-4 and

based upon personal knowledge of the declarant before the court may grant an evidentiary hearing." R. 3:22-10(c); see State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

"In addressing an ineffective assistance [of counsel] claim based on a counsel's failure to call an absent witness, a PCR court must unavoidably consider whether the absent witness's testimony would address a significant fact in the case, and assess the absent witness's credibility." L.A., 433 N.J. Super. at 15. "However, the assessment of an absent witness's credibility is not an end in itself." Ibid. Instead, "it is a factor in the court's determination whether there is a reasonable probability that, but for the attorney's failure to call the witness, the result would have been different—that is, there would have been reasonable doubt about the defendant's guilt." Id. at 15-16.

When a reviewing court considers the impact an absent witness may have, it "should consider: '(1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution.'" Id. at 16-17 (quoting McCauley-Bey v. Delo, 97 F.3d 1104, 1106 (8th Cir. 1996)). "All three factors

derive from the court's obligation under Strickland to consider the totality of the evidence in making its prejudice determination." Id. at 17.

In New Jersey, the right to the effective assistance of counsel extends to PCR counsel. See State v. Rue, 175 N.J. 1, 18-19 (2002). PCR counsel must "advance all of the legitimate arguments requested by the defendant that the record will support," R. 3:22-6(d), and "make the best available arguments in support of them," Rue, 175 N.J. at 19. Thus, "PCR counsel must communicate with the client, investigate the claims urged by the client, and determine whether there are additional claims that should be brought forward." State v. Webster, 187 N.J. 254, 257 (2006) (citing Rue, 175 N.J. at 18-19). However, PCR counsel is not required to bolster claims raised by a defendant that are without foundation. Ibid. We add the remedy for PCR counsel's failure to meet the requirements imposed by R. 3:22-6(d) is not a new trial, but rather a new PCR proceeding. State v. Hicks, 411 N.J. Super. 370, 376 (App. Div. 2010) (citing Rue, 175 N.J. at 4).

Short of obtaining immediate relief, a defendant may show that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim. Preciose, 129 N.J. at 462-63. The mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing.

Cummings, 321 N.J. Super. at 170. Rather, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." State v. Marshall, 148 N.J. 89, 158 (1997) (citations omitted).

The PCR court should grant an evidentiary hearing only when: "(1) the defendant establishes a prima facie case in support of PCR; (2) the court determines that there are disputed issues of material fact that cannot be resolved by review of the existing record; and (3) the court determines that an evidentiary hearing is required to resolve the claims asserted." State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Porter, 216 N.J. 343, 354 (2013)).

"Where, as here, the PCR court has not conducted an evidentiary hearing, we review its legal and factual determinations de novo." State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020); see also State v. Nash, 212 N.J. 518, 540-41 (2013). However, "we review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing Marshall, 148 N.J. at 157-58).

## III.

We next apply these foundational principles to the matter before us. Defendant argues he is entitled to an evidentiary hearing because he established a prima facie case that his first PCR counsel was ineffective "for failing to submit an affidavit or certification regarding . . . Reilly, a potential exculpatory witness." As in his previous PCR petition, defendant argues Reilly would have testified that Reilly, Milton, and defendant conspired to steal WaveRunners from defendant's wife—not to kill her. He claims Reilly also would have testified defendant was "merely 'talking tough'" when discussing murdering his wife with Milton.

We agree with Judge Ryan that defendant has not established a prima facie case for ineffective assistance of PCR counsel. First, defendant's certification that Reilly would have testified defendant, Reilly, and Milton discussed plans to steal WaveRunners, and not kill his wife, is belied by the electronic recording evidence adduced at trial. So too defendant's certification "there was never any discussion, or comments whatsoever about murdering or harming my wife" is simply untrue.

For example, the transcript from an electronic recording shows Milton asked defendant, "[y]ou want her dead[?]" Defendant responded, "[y]es." When

15

Milton asked about the body, defendant replied, "[j]ust dump it. I don't give a s**t." Defendant told Milton, "[a]lright, ten G's to take her out and that should be enough to cover everything we need to cover."

And on July 2, 2008, defendant said he wanted Milton's cousin to "just go in there and mess [his wife], you know, bang her up real f**kin' good . . . beat the s**t out of her, do you know what I'm saying." He continued, "I want, I want him to f**k her face up real good. I want him to give her a f**king beating." He also said, "I wanna' f**k [my wife] up. I wanna' bust her up. Give her a beating in the house."

Defendant's certification alleges Reilly gave a statement explaining, "Reilly, Milton, and I discussed plans to remove jet skis (known as 'WaveRunners') from my former [marital] property." However, that assertion does not dimmish the incriminating impact of the recorded conversations between defendant and Milton. In other words, even assuming for the sake of argument there was a conversation between Reilly, Milton, and defendant about WaveRunners, that fact does not undermine the impact of defendant's recorded conversations with Milton in which defendant expressed a clear intention to have his wife killed.

16

In sum, defendant has not established a prima facie case for ineffective assistance of counsel by failing to call Reilly—a witness who could not be located. Considering the likely impeachment of the uncalled defense witness and the strength of the evidence actually presented by the prosecution, see ibid., defendant has failed to establish Reilly's testimony would have changed the result of the proceeding as required under the Strickland/Fritz test. See Strickland, 466 U.S. at 668. Accordingly, defendant has failed to establish a basis for an evidentiary hearing. See Cummings, 321 N.J. at 170.

Affirm.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3665-21